James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Debra L. Spinelli, Esq., Bar No. 9695
DLS@pisanellibice.com
Jordan T. Smith, Esq., Bar No. 12097
JTS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada  89101
Telephone:    702.214.2100
Facsimile:    702.214.2101

*Special Counsel for Gypsum Resources, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GYPSUM RESOURCES, LLC, a Nevada limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>CLARK COUNTY, a political subdivision of the State of Nevada; and CLARK COUNTY BOARD OF COMMISSIONERS,<br><br>Defendants. | Adv. Proc. No.:  19-01105-MKN<br><br>U.S.D.C. No.:  2:19-CV-00850-GMN-GWF<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES; PETITION FOR WRIT OF MANDAMUS, AND DAMAGES**<br><br>**JURY DEMANDED** |

COMES NOW Plaintiff GYPSUM RESOURCES, LLC, a limited liability company, by and through its counsel at the law firm of PISANELLI BICE PLLC, and hereby complains against Defendants CLARK COUNTY, a political subdivision of the State of Nevada, and CLARK COUNTY BOARD OF COMMISSIONERS and alleges and petitions this Court as follows:

**I.**

## PARTIES AND JURISDICTION

1.      Plaintiff GYPSUM RESOURCES, LLC ("Gypsum"), is a Nevada limited liability company licensed under the laws of the State of Nevada and is the owner of approximately 2,400 acres of real property encompassing Blue Diamond Hill and the Hardie Gypsum Mine located in Clark County, Nevada (the "Gypsum Property").

2.      Plaintiff is informed and believes and thereupon alleges that Defendant CLARK COUNTY ("Clark County), is a political subdivision of the State of Nevada.

3.      Plaintiff is informed and believes and thereupon alleges that Defendant CLARK COUNTY BOARD OF COMMISSIONERS (the "Board") is the governing board authorized to conduct business, adopt laws, and adjudicate land use matters, on behalf of Clark County.

4.      Jurisdiction is proper under 28 U.S.C. § 1331 because certain claims in this action arise under the Constitution of the United States, specifically the Equal Protection Clause of the Fourteenth Amendment, and under 42 U.S.C. § 1983. Moreover, this Court has supplemental jurisdiction over the state-law-based claims under 28 U.S.C. § 1367 as such claims are so related to the claims within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## II.

## GENERAL FACTUAL ALLEGATIONS

**A.      Red Rock Canyon National Conservancy Area Established.**

5.      In 1990, Congress established the Red Rock Canyon National Conservation Area ("RRCNCA"), designating nearly 200,000 acres of land as a conservation area to be administered by the Bureau of Land Management. 16 U.S.C. § 460ccc-1. Congress specifically noted that it did not "intend for the establishment of the [RRCNCA] to lead to the creation of protective perimeters or buffer zones around" RRCNCA, and that its establishment of the RRCNCA did not automatically preclude surrounding lands from the same activities prohibited within the RRCNCA. 16 U.S.C. § 460ccc-9.

6.      In 1993, the Nevada Legislature enacted the Red Rock Canyon Conservation Area and Adjacent Lands act, restricting land use for the RRCNCA.

7.      Plaintiff is informed and believes and thereupon alleges that in 2001, Clark County established the Red Rock Design Overlay District, encompassing land surrounding the RRCNCA. The purpose of the Red Rock Design Overlay District is to "minimize the visual impact of development within the area, to maintain the rural character and

cultural heritage of the community, preserve wildlife habitat, and minimize the impacts of additional traffic." Chapter 30.48, Section 30.48.280, Clark County Code. In pertinent part, the Red Rock Design Overlay District places significant restrictions on how land within the district may be used and/or developed.

**B.      Gypsum Resources, LLC Acquires 2400 +/- Acre Hardie Gypsum Property.**

8.      In 2003, Plaintiff purchased the 2400 +/- acre Gypsum Property for purposes of developing the property as a master-planned residential community.   Gypsum principal, James M. Rhodes, has extensive experience and has had success in the design and development of master-planned residential developments.

9.      Upon information and belief, when Plaintiff purchased the Gypsum Property, none of the property fell within the boundaries of either the RRCNCA or the Red Rock Design Overlay District.

10.      When Plaintiff purchased the Gypsum Property, the land was zoned "RU", thus generally permitting one home on every two acres.  Accordingly, Plaintiff intended to submit a Major Project Application seeking a zoning variance and other necessary approvals so that it could develop the Gypsum Property into a master-planned residential community with development and design standards that emphasize environmental compatibility and a high qualify community.

11.      Upon information and belief, when Plaintiff purchased the Gypsum Property, the "R U" zoning code was considered as a sort of "holding zone" in Clark County, as Defendants had frequently approved the applications of other homebuilders to develop multiple residential dwelling units on land which had been previously designated as "R U".

12.      Upon information and belief, the Gypsum Property's prior owner, the James Hardie Gypsum Company, was required to reclaim the lands which had been disturbed by mining activities, pursuant to an agreement with the Bureau of Land Management ("BLM"). Upon information and belief, Plaintiff assumed certain reclamation responsibility when it acquired the Gypsum Property.

13.     Plaintiff has continued mining operations at the Hardie Gypsum Mine since its purchase of the Gypsum Property.

14.     Upon information and belief, on or about May 6, 2003, Defendant Clark County publicly announced its intention to purchase the Gypsum Property for purposes of restoring the land and transferring the land to BLM to be incorporated into the RRCNCA.    This Clark County public announcement was aimed at freezing Gypsum's development opportunities and property values for the benefit of Clark County.

15.     On or about May 19, 2003, the Nevada Legislature approved SB 358, a bill which precluded Plaintiff from seeking a zoning variance from Clark County to develop the Gypsum Property as a master-planned residential community as Plaintiff originally intended. SB 358 was signed into law by Governor Kenny Guinn on or about May 19, 2003.

16.     On or about May 21, 2003, Defendant Clark County adopted Clark County Ordinance 2914, which expanded the Red Rock Design Overlay District to prohibit land use applications to increase the zoning density for properties within the district. This expansion added Plaintiff's Gypsum Property to the Red Rock Design Overlay District and effectively deprived Plaintiff of its investment backed expectation to develop the Gypsum Property as Plaintiff originally intended.

17.     Upon information and belief, the purpose behind SB 358 and Clark County Ordinance 2914 was to drive down the fair market price of the Gypsum Property so that Defendants could pressure Plaintiff to sell and/or exchange the Gypsum Property to Defendant and/or the BLM for a low price.

**C.     Gypsum Resources Files Suit Against Clark County and the State of Nevada.**

18.     On or about May 10, 2005, Plaintiff filed suit in Nevada federal court, challenging the constitutionality of SB 358 and the Board's expansion of the Red Rock Design Overlay District in an action entitled *Gypsum Resources, LLC vs. Masto, et al.*, Case No. CV-S-05-0583-RCJ-LRL (the "Federal Lawsuit").

19.     On or about May 18, 2005, Plaintiff filed a parallel action in the First Judicial District Court of the State of Nevada entitled *Gypsum Resources, LLC vs. State of Nevada*,

Case No. 05-00614A (the "State Lawsuit") which was substantially similar to the Federal Lawsuit claims challenging SB 358.

20.     After extensive litigation and associated delays, in November 2009, the federal district court found that SB 358 violated the Nevada Constitution, granting partial summary judgment in Plaintiff's favor. The State of Nevada appealed the decision to the Ninth Circuit Court of Appeals, who then certified questions to the Nevada Supreme Court regarding the constitutionality of SB 358.   Thereafter, the Nevada Supreme Court agreed with the federal district court, holding that SB 358 violated the Nevada Constitution.

**D.      Clark County and Gypsum Settle the Federal Lawsuit.**

21.     In approximately April 2010, after Clark County unreasonably and unlawfully froze Gypsum's development efforts and property values for the past seven (7) years, and considering the risks and costs associated with continued litigation against a government municipality with unlimited resources, and the negative consequences of continued delay, Plaintiff entered into a written Stipulation and Settlement Agreement Pursuant to Court Ordered Settlement Conference (the "Settlement Agreement") with Clark County in order to resolve both the state and federal lawsuits.   A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.

22.     The Settlement Agreement required, *inter alia*, Defendants to amend the Clark County Code to allow an exception (the "Red Rock Design Overlay District Exception") to the Red Rock Design Overlay District, removing certain portions of Plaintiff's Gypsum Property from the Red Rock Design Overlay District in order to allow Gypsum to seek approvals to increase residential densities in its master-planned development.

23.     The Settlement Agreement authorized Plaintiff's submittal of a Major Project Application for a master-planned residential development with residential densities higher than those allowed in the holding RU zoning, pursuant to Chapter 30.20 of the Clark County Code to Defendant Clark County to develop the Gypsum Property as a Major Project master-planned residential community.   The Settlement Agreement contemplated that Gypsum would increase

its zoning density over the RU zoning density and that a master-planned residential community application would be processed by the County in good faith.

24.     The Settlement Agreement further required Clark County to allow for the submittal by Plaintiff of an application to the Board of County Commissioners pursuant to Chapter 30.20 of the Clark County Code, and the Board to process Plaintiff's Major Project Application "in good faith."  Specifically, the Settlement Agreement provides in relevant part:

> 5.     The Major Project Application.
>
> The Parties acknowledge that, after the Adoption of the Amending Ordinance and the approval of this Agreement, Gypsum intends to submit a Major Project application for the development of a master planned community pursuant to Chapter 30.20 of the Clark County Code, and subject to all generally applicable and currently adopted codes (the "Major Project Application").  The County and Gypsum acknowledge that the Major Project Application may include adjustments, considerations and deviations to take into account the previous mining activities on the Property.  The County agrees that it will process the Major Project Application under the Major Projects process in good faith.  Gypsum understands that the County, by this Agreement, cannot and is not committing to approval of any particular Major Project and/or any particular densities or uses.

*See*, Exhibit 1.

25.     On April 21, 2010, the Board approved the Red Rock Design Overlay District Exception, and Chapter 30.48 of the Clark County Code was amended to allow Plaintiff to proceed with its Major Project Application.

26.     The Settlement Agreement further required Plaintiff within five days of the passage of the Red Rock Design Overlay District Exception, to dismiss both the state and federal lawsuits against Defendants. Accordingly, and as required in the Settlement Agreement, and with the understanding and belief that Clark County would comply with the Settlement Agreement, Plaintiff dismissed both the State Court Lawsuit and Federal Lawsuit on May of 2010.

**E.     Gypsum Submits its Major Project Application.**

27.     In or about June 2011, and in furtherance of the Settlement Agreement, Plaintiff submitted an application to Clark County proposing to develop a community on the Gypsum Property which included 7,269 residential dwelling units (the "2011 Concept Plan").

28.    On or about August 17, 2011, the Clark County Board approved the 2011 Concept Plan subject to multiple conditions. One of the conditions of approval reduced the potential residential dwelling units to 5,026. Another condition of approval was a prohibition on primary access to the new development via State Route 159.

29.    On or about September 29, 2011, Plaintiff timely submitted its Reclamation Specific Plan ("Specific Plan") and Public Facilities Needs Assessment ("PFNA") and paid its related application fees to Clark County thereby completing its next step submittals in Clark County's Major Projects review process.

30.    Thereafter, Plaintiff's Major Projects review process was placed "on hold" by Clark County while a potential land exchange for the Gypsum Property with the BLM was contemplated and pursued.

31.    In approximately October 2014, negotiations with the BLM related to a land exchange ceased, and no land exchange occurred.  The BLM land exchange proposal was denied in or around February of 2015.  Clark County's renewed land exchange efforts described herein, further delayed and damaged Gypsum's efforts to timely develop its master-planned community.

32.    Unbeknownst to Plaintiff, during the time the Parties were pursuing a potential land exchange with BLM, Defendant Clark County allegedly "misplaced" Plaintiff's Clark County zoning paper file containing its September 2011 Specific Plan and PFNA applications and corresponding proof of payment of the required fees, for the Clark County administrative applications.

33.    Upon information and belief, Clark County has asserted that it also failed to enter all of the assessor parcel numbers for Plaintiffs' 2011 Specific Plan and PFNA applications into the County's computer system.  These intentional and/or negligent actions or omissions by Clark County in properly processing Gypsum's Specific Plan and PFNA applications further delayed and damaged Gypsum and its efforts to develop its master-planned community.

34.     As a result of Defendants misplacing Plaintiff's paper file and Defendants' failure to input all assessor parcel numbers into the County's computer system, Defendant Clark County next erroneously asserted that Plaintiff had not timely submitted its 2011 Specific Plan and PFNA applications, or paid the required fees for the 2011 Concept Plan to move forward.

35.     In or about July 2016, after Clark County advised Gypsum representatives a new Major Project Concept Plan would necessarily need to be filed, Plaintiff submitted a second proposal to develop the Gypsum Property (the "2016 Concept Plan") which incorporated the reduced residential density and all of the specific conditions for approval from the 2011 Concept Plan.  Clark County's administrative errors further and improperly damaged and delayed Gypsum's efforts to develop its master-planned residential community.

36.     On or about December 9, 2016, in an effort by Clark County and certain of its commissioners to avoid potential political fall-out with a vote on the proposed Gypsum development concept plans, Defendant Clark County filed an ill-conceived Complaint in Eighth Judicial District Court of the State of Nevada ("Save Red Rock Lawsuit") against Plaintiff and Save Red Rock ("SRR"), a non-profit group which had been actively opposing Plaintiff's efforts to develop the Gypsum Property.  Such actions were done in contravention of Clark County's "good faith" obligations under the Settlement Agreement, violated Clark County's obligation to process Gypsum's applications, and resulted in further damages and additional delay to Gypsum's development efforts.   This County strategy to avoid processing and voting on Gypsum's Major Project Application was ill conceived, and caused additional delay, hardship, legal fees, and damages to Plaintiff and its development of the Gypsum Property.

37.     In the Save Red Rock Lawsuit, Clark County sued both Gypsum Resources and Save Red Rock and sought a Court declaration that its approval of Plaintiff's 2011 Concept Plan had not expired because Plaintiff submitted its 2011 Specific Plan and PFNA within one year of receiving conditional approval of its 2011 Concept Plan.  This Clark County move was designed to have a Court ordered decision on the 2011 Concept Plan, so then-acting

County Commissioner Brager would not have to properly hear and vote on Gypsum's 2016 Concept Plan. Such actions by former County Commissioner Brager and Clark County were done in bad faith and in further violation of the Settlement Agreement. Clark County's Save Red Rock Lawsuit resulted in significant delay and corresponding damages to Plaintiff's efforts to develop the Gypsum Property and caused Gypsum damages.

38. In the Save Red Rock Lawsuit, the Save Red Rock Coalition ("SRR") asserted counterclaims against Clark County and Plaintiff, as well as asserting a cross-claim against Plaintiff. SRR sought a Court declaration that Plaintiff's 2011 Concept Plan had expired and also sought to enjoin Plaintiff from accessing Highway 159 because Defendants' approval of the 2011 Concept Plan expressly denied Plaintiff of the right to utilize Highway 159 for primary access to its land. Extensive discovery and motion practice took place in the Save Red Rock Lawsuit. Save Red Rock was represented by Attorney Justin Jones, now newly-elected County Commissioner. In such capacity as counsel for SRR, Justin Jones participated in and became privy to extensive discovery regarding Gypsum's financial and operational workings which are generally not part of, or made available to the reviewing entity, in land use entitlement applications. Also, in his capacity as counsel for Save Red Rock, attorney Justin Jones, challenged Gypsum's efforts to develop the Gypsum Property in Court proceedings, and further appeared in opposition to Gypsum's pending Major Project Application before Clark County and its Boards.

39. The agendas for Clark County's Board's Zoning Commission Meetings for December 7, 2016, February 8, 2017, and February 22, 2017, stated that Plaintiff's 2011 Concept Plan had expired, noting that the 2016 Concept Plan incorporated the conditions placed on the 2011 Concept Plan.

40. At the December 7, 2016, and February 8, 2017, Zoning Commission Meetings, the Board voted to again further delay consideration of Plaintiff's 2016 Concept Plan until future meeting dates. These delays caused further damage to Plaintiff.

41. Upon information and belief, in February 2017, Clark County employee Joel McCullouch located Plaintiff's paper Major Project file which included evidence that Plaintiff

had timely submitted its 2011 Specific Plan and PFNA, land use application, and paid required fees in September 2011.

42.    At the February 22, 2017, Zoning Commission Meeting, District Attorney Robert Warhola, advised that it was now Defendant Clark County's' position that Plaintiff's 2011 Concept Plan had not expired, and that Clark County believed the 2011 Concept Plan was still in effect.  The uncertainties of Clark County's inconsistent and changing positions related to Gypsum's Concept Plans likewise caused uncertainties, delays, and damages to Plaintiff.

43.    At the February 22, 2017, Zoning Commission Meeting, Defendants asked Plaintiff to withdraw the 2016 Concept Plan, without prejudice, in order to avoid a motion to deny the 2016 Concept Plan. Plaintiff agreed to withdraw the 2016 Concept Plan without prejudice with the understanding and reliance upon Clark County's commitment to timely process Plaintiffs' 2011 Concept Plan in "good faith" as required in the Settlement Agreement. The Board then voted to approve Plaintiff's withdrawal without prejudice of the 2016 Concept Plan.  In the interim, and as further accommodations to Clark County, SRR and engaged participants, Gypsum again reduced its sought after housing densities within the proposed development plan.

44.    Following the conciliatory density reductions by Gypsum, then Clark County Commissioner Susan Brager ("Brager") repeatedly promised Gypsum Representatives "that the County would timely process and make a "good faith" decision on Gypsum's now long pending 2011 Concept Plan."  The Gypsum Property was located within former County Commissioner Brager's District and her engagement, in good faith, was necessary for the Gypsum Concept Plan to move forward with Clark County.

45.    Despite former County Commissioner Brager's prior assurances, she again refused to allow Gypsum's Concept Plan to move forward to a Clark County Commission vote citing initially the then pending 2018 primary election and potential controversy over the Gypsum 2011 Concept Plan.

46.    During the Summer and Fall of 2018, Brager made repeated assurances to Gypsum Land Use Application Representatives that "she supported the now again reduced

10

density 2011 Concept Plan" and that she "guaranteed" Gypsum's application would be heard by the then acting County Commission before the end of Brager's 2018 commission term. Despite these assurances, the County continued to fail to process the 2011 Concept Plan in "good faith" as required by the Settlement Agreement.

47.     Unfortunately, in late 2018 Brager unreasonably and in bad faith flip-flopped and advised Gypsum she would no longer support Gypsum's long-stalled 2011 Concept Plan Application.

48.     On December 5, 2018, Plaintiff's applications were finally listed on the agenda as items to be considered by the Board. Instead of considering Plaintiff's applications in good faith as required by the Settlement Agreement, and working towards a Development Agreement, at the urging of Clark County, Plaintiff's applications were once again held over to a future date.

**F.     Attorney Justin Jones Represents Save Red Rock in the Save Red Rock Litigation and Runs for County Commission.**

49.     From its inception to dismissal in November of 2018, Justin Jones, as an attorney with Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and then his own firm, Jones Lovelock LLP, represented Save Red Rock against Gypsum in the Save Red Rock Litigation.

50.     Justin Jones, in his capacity as counsel of record for Save Red Rock, conducted extensive discovery and motion practice as against Gypsum Resources and obtained operational, financial, and developmental records and plans of Gypsum Resources as to its Gypsum Property. Moreover, in furtherance of his legal representation of Save Red Rock, Jones appeared on behalf of Save Red Rock in the fall of 2016 before the Clark County Planning Commission in opposition to Gypsum's pending applications.

51.     During 2017 and 2018, Justin Jones ran for the Clark County Commission seat which was to be vacated by outgoing County Commissioner Brager. Further, during his County Commissioner campaign, Justin Jones ran a campaign aimed at defeating Gypsum's plans to develop the Gypsum Property.

52.     In late October of 2018, Justin Jones posted a Halloween picture on his Facebook page of him dressed in his Halloween costume "The Red Rock Guy" and stated his "**superpower is making compelling arguments for preservation and fending off my arch-nemesis Jim the Sprawl Developer**."  Justin Jones acknowledged that James Rhodes, principal of Gypsum Resources, is his "arch-nemesis."  A true and correct copy of Justin Jones' Facebook posting is attached hereto as Exhibit 2.

53.     During Justin Jones' campaign for Clark County Commissioner, a central issue in his campaign was the protection of Red Rock Canyon and he regularly used the term "The Red Rock Guy" in many of his campaign advertisements.

54.     On November 6, 2018, Justin Jones was elected to the Clark County Commission.  Within two (2) days of winning the County Commission election, Jones stipulated to dismiss the Save Red Rock Litigation.  Following dismissal, Jones was quoted in the Las Vegas Review Journal that "there was simply a realization that [SRR] resources would be better focused on telling the commission why the project doesn't make sense."  "At this point Save Red Rock remains dead set against it "[Gypsum's development plans].

55.     Following the November 2018 election, then Clark County Commission Chair, Steve Sisolak, announced the long pending Gypsum 2011 Concept Plan application would again be delayed until the newly elected County Commissioners were seated in January of 2019.  Tabling Gypsum's County applications until after the existing County Commission, with years of experience and knowledge of Gypsum's 2011 Concept Plan, was termed out and until the "Save Red Rock Guy" newly elected Commissioner Justin Jones took office was in further bad faith and in violation of the County's obligations under the Settlement Agreement. Certainly, for Clark County to "table" Gypsum's application until after Justin Jones, the self-proclaimed "arch-nemesis" of Gypsum's principal, James Rhodes, was sworn in as County Commissioner was done in further bad faith and breach of the Settlement Agreement.

56.     As expected, when Gypsum's Waiver of Condition Application No. WC-18-400232 (MP-0313-1) finally came forward for hearing in April of 2019, newly elected Commissioner Justin Jones participated in the hearing, made the motion to deny

Gypsum's Application, and voted to deny Gypsum's pending Waiver of Condition Applications (MP-0313-1).  Thereafter, Clark County removed the 2011 Concept Plan and Specific Plan associated PFNA application from the County Agenda with "no action."  In doing so, Clark County again failed to meet its obligations to process, in good faith, Gypsum's applications.

57.    Gypsum asserts that the County's above-described actions were done in violation of the 2010 Settlement Agreement and its obligations to process the Major Project Application in "good faith" as required by the Settlement Agreement.

58.    Gypsum further asserts that newly elected Commissioner Justin Jones' actions of hearing, participating in, moving for, and voting on, Gypsum's pending application was done in contravention of Clark County's obligations of good faith under the Settlement Agreement.

59.    Moreover, Gypsum asserts that its constitutional rights of due process and equal protection have been violated by Clark County and its newly-elected Commissioner Justin Jones.  A fair trial in a fair tribunal is a basic requirement of due process.  This basic tenant of fairness applies to administrative agencies which adjudicate land use matters as well as to Courts.  Gypsum is informed and believes and thereon asserts that Commissioner Jones was, and remains conflicted from participating in the adjudication of Gypsum's development plans.  Simply dismissing the Save Red Rock Litigation does not cure Commissioner Jones' conflict of interest and/or his pre-disposition against the Gypsum application and his self-declared "arch-nemesis" . . . "Jim [Rhodes] the sprawl developer" principal of Gypsum.

60.    County Commissioner Justin Jones has acknowledged that Gypsum Resources principal Jim Rhodes is his "arch-nemesis."  *See*, Exhibit 2 attached hereto.  Yet County Commissioner Jones failed to abstain on Gypsum's pending land use matters heard Gypsum's application, moved to deny such matters, and voted against such matters.  In so doing, Gypsum's due process rights to fundamental fairness were violated.  Further, Clark County has failed, and continues to fail to meet its "good faith" obligations owed to Gypsum under the Settlement Agreement.

61.     Moreover, Commissioner Jones interfered with Gypsum's attorney-client relationship with Rhodes and Gypsum's long standing law firm, Kemp, Jones & Coulthard, LLP, resulting in that firm's withdrawal from representing Gypsum in this matter. Clark County, through newly elected Commissioner Jones' actions, has effectively deprived Gypsum of legal representation of its own choosing.  Clark County's actions, which have destroyed Gypsum's right to be represented by counsel of its choice is arbitrary, capricious, unlawful, and in bad faith in further violation of the Clark County's obligations under the Settlement Agreement.

62.     As of the date of the filing of this Complaint, Plaintiff's 2011 Concept Specific Plan and PFNA applications have still not been considered by Defendants, despite the fact that they have been pending with Defendants for over seven years and Defendants have known for over three years that Plaintiff was not proceeding with any kind of land swap with BLM. Given the course of conduct of defendants concerning the applications, any further attempts to obtain entitlements would be futile.

63.     The above described Clark County actions, which have spanned years and resulted in Gypsum's inability to move forward with its master-planned development, have so severely delayed and damaged Gypsum that such actions caused Gypsum to file for Chapter 11 Bankruptcy protection in August of 2019.

### III.

### FIRST CLAIM FOR RELIEF

**(Petition for Writ of Mandamus)**

64.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

65.     When a governmental body fails to perform an act "the law especially enjoins as a duty resulting from an office, trust or station" or acts in an arbitrary or capricious manner, a writ of mandamus shall issue to correct the action.  NEV. REV. STAT. § 34.160; *see also*, *Int'l Game Tech., Inc. v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 179 P.3d 556, 558

(Nev. 2008). Gypsum is also entitled to a writ of mandamus under the All Writs Act. *See* 28 U.S.C. § 1651.

66.     Clark County failed to perform various acts that the law requires including, but not limited to, the fair, unbiased, and timely processing of Gypsum's Major Project Application Specific Plan and FFNA

67.     Clark County and the Board acted arbitrarily and capriciously by performing or failing to perform the acts enumerated above and because, *inter alia*:

    a.     There is no legitimate governmental purpose for the failure of Commissioner Jones to fail to abstain from the Gypsum Applications;

    b.     Clark County and the Board's actions are not based on any reason related to the public health, safety, or well-being;

    c.     Clark County and the Board violated Gypsum's right to due process.

68.     These violations of the Defendants' legal duties and arbitrary and capricious actions compel this Court to issue a Writ of Mandamus directing Clark County and the Board to require Commissioner Jones' recusal from any participation in Gypsum's Applications, and take all other necessary action to correct the Defendants' actions and to require Clark County to deal in "good faith" with Gypsum Applications as required in the Settlement Agreement.

69.     As a result of the Defendants' unlawful and arbitrary and capricious actions, Plaintiff has been forced to retain legal counsel to prosecute this action and is therefore also entitled to its damages, costs in this suit, and an award of attorneys' fees pursuant to NRS 34.270.

## IV.

## <u>SECOND CLAIM FOR RELIEF</u>

### (Equal Protection Violation)

70.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

71.     Clark County and the Board have violated Plaintiff's right to equal protection under the Nevada and United States Constitutions.

72. By failing to timely process and fairly adjudicate Gypsum's Major Project Applications as described herein, Clark County and its Board has unfairly, and in bad faith, targeted Gypsum.

73. Clark County and the Board intentionally, and without rational basis, treated Plaintiff differently from others similarly situated. Gypsum has been treated differently from every other major project development subject to Title 30 of the Clark County Code because it has endured unending delays in processing its development applications and has been forced to comply with extraordinary conditions, processes, procedures, public review meetings, hearings, and timelines dramatically beyond those defined in Title 30.20 Development Code "Major Projects Application Processing." Gypsum's applications have been stalled and delayed well-beyond any reasonable time period and past the historical average for all similarly sized projects considered and approved in Clark County. In an unprecedented move, Gypsum has been required to resolve right-of-way and access issues with a federal agency in advance of the Commission defining the "project" through the Title 30 Major Projects Specific Plan + PFNA process that establishes the project parameters, thresholds, and capacities. Previously approved developments processed through Clark County Major Projects have acquired rights-of-way through the rational implementation of the development code following the Specific Plan + Public Facilities Needs Assessment step. Moreover, no other major projects developer has been subject to votes by biased decision-makers like Commissioner Justin Jones. Other similarly situated projects have not been discriminated against by Commissioner Jones in ways that Gypsum has and they have not suffered the conditions and delays imposed on Gypsum. Previous Major Projects similar in size and scope include, but are not limited to, Bonny Springs, Summerlin South, Mountain's Edge, and Southern Highlands. Accordingly, Defendants have violated the equal protection clause of the Fourteenth Amendment of the United States Constitution. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

74. Plaintiff is entitled to damages for these Equal Protection violations.

75.     As the action of Clark County and its Board necessitated that Plaintiff hire counsel and incur fees and costs to bring this action, Plaintiff is also entitled to attorneys' fees and costs of suit.

## V.

## THIRD CLAIM FOR RELIEF

### (Violation of 42 U.S.C. § 1983)

76.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

77.     The Defendants' actions also subject them to liability under 42 U.S.C. § 1983.

78.     The above-referenced Equal Protection violations were committed by Clark County and the Board purportedly acting under color of state laws including but not limited to NRS 237.070-090 and NRS 268.095.

79.     That conduct deprived Plaintiff of the rights, privileges, and immunities secured by the Constitution and/or laws of the United States to which Plaintiff is and was legitimately entitled.

80.     Plaintiff has been damaged by such deprivations in an amount to be determined at trial.

81.     As the above-referenced Constitutional violations are ongoing, Plaintiff is also entitled to injunctive relief from Clark County's arbitrary and capricious action and from further biased and bad faith adjudications by the Board.

82.     Defendants' conduct has required Plaintiff to incur attorneys' fees and costs of suit to bring this action, and Plaintiff is entitled to attorneys' fees and costs under, *inter alia*, 42 U.S.C. § 1983 et seq. and 42 U.S.C. § 1988(b).

## VI.

## FOURTH CLAIM FOR RELIEF

### (Injunctive Relief)

83.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

84.     Plaintiff is entitled to a preliminary and permanent injunction enjoining further Clark County arbitrary and capricious actions and unfair and unconstitutional processing of Gypsum's Major Project Applications.

85.     Clark County and the Board's actions have caused Plaintiff to suffer irreparable harm in the form of delay and uncertainty as to its Major Project Applications.

86.     Plaintiff has no plain, speedy, or adequate remedy at law.  Unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm, including violations of its Constitutional rights, lost business income, and injury to Plaintiff's business goodwill and other business relationships.  Monetary damages are inadequate to fully compensate Plaintiff because of the difficulty in quantifying lost opportunity costs and harm to business goodwill and other relationships.

87.     Plaintiff has a reasonable probability of success on the merits of its claims and the public interests and relative hardships all weigh in favor of granting injunctive relief.

88.     A preliminary and permanent injunction should therefore issue enjoining the Board's arbitrary and capricious actions as alleged herein, and further enjoining Clark County and the Board from continuing to unreasonably delay Gypsum's major project application and requiring Clark County and the Board to properly, fairly, timely, and in good faith process Gypsum's pending applications as required by the Settlement Agreement Any injunction should further preclude Commissioner Jones from participating in, and voting upon his "arch-nemesis" applications that come before the County.

89.     As the action of Clark County and the Board necessitated that Plaintiff hire counsel and incur fees and costs to bring this action, Plaintiff is also entitled to attorneys' fees and costs of suit.

## VII.

### FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

90.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

91.     The Settlement Agreement is a valid, binding, and existing contract.

92.     Plaintiff has fully performed its obligations and responsibilities under the contract.

93.     Defendants breached the contract by failing to timely and fairly process Plaintiff's development applications in good faith.

94.     As a direct, proximate, and foreseeable cause of the conduct of Defendants as described above, Plaintiff has been damaged in excess of $75,000.00.

95.     As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein.

## VIII.

## SIXTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

96.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

97.     Plaintiff and Defendants are parties to a valid and existing contract; namely, the Settlement Agreement.

98.     The covenant of good faith and fair dealing is inherent and implied in every contract and in particular is implied in the Settlement Agreement.

99.     Defendants owed Plaintiff a duty of good faith and fair dealing.

100.    Defendants have breached their duty of good faith and fair dealing by committing the acts and/or omissions described herein in a manner that was unfaithful to the purpose of the Settlement Agreement.

101.    Plaintiff's justified expectations under the Settlement Agreement were thus denied.

102.    As a direct, proximate, and foreseeable cause of the conduct of Defendants as described above, Plaintiff has been damaged in excess of $75,000.00.

103.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein.

## IX.

### SEVENTH CLAIM FOR RELIEF

#### (Inverse Condemnation)

104.    Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

105.    Defendants' acts and/or omissions have resulted in a de facto taking of Plaintiff's valuable property and the loss of intended economic benefit to Plaintiff, because the Defendants have delayed timely consideration of Plaintiff's development applications fairly in good faith, as required by the Settlement Agreement, thus depriving Plaintiff of its right to develop its property.

106.    Defendants' taking of Plaintiff's property by the public constitutes a taking by inverse condemnation which requires compensation under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Nevada Constitution, requiring Defendants to pay full and just compensation to Plaintiff.

107.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein pursuant to NRS 37.185.

## XI.

### EIGHTH CLAIM FOR RELIEF

#### (Pre-Condemnation Damages)

108.    Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

109.    Following Clark County's announcement of its intent to acquire for purposes of a BLM land exchange, and its unreasonable actions surrounding such announcement, Clark County has, and continues to wrongfully freeze, delay, and oppose Gypsum's

development efforts.  Defendants' acts and/or omissions have resulted in Plaintiff suffering significant pre-condemnation damages in an amount to be determined, due to the massive delays in processing Plaintiff's development applications, freezing of corresponding property values, without paying Plaintiff just compensation.

110.    The pre-condemnation taking of Plaintiff's property by the public for use mandates compensation under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Nevada Constitution, requiring Defendants to pay full and just compensation to Plaintiff in an amount to be determined.

111.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein pursuant to NRS 37.185.

## XII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    For the issuance of a writ of mandamus;

2.    For declaratory relief as set forth above;

3.    For a preliminary and permanent injunction as set forth herein;

4.    For payment of full and just compensation for the taking of property from the subject property in excess of Seventy-Five Thousand Dollars ($75,000.00);

5.    For Pre-Condemnation damages occasioned by the County's oppressive and unreasonable conduct in an amount to be proven at trial;

6.    For compensatory and special damages as set forth herein;

7.    For interest from the date of taking until judgment;

8.    For pre-judgment and post-judgment interest, as allowed by law;

9.    For attorneys' fees and costs of suit;

10.    For all other remedies and relief that the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all issues so triable.

DATED this 3rd day of July, 2020.

PISANELLI BICE PLLC


By: _/s/ Todd L. Bice_
      James J. Pisanelli, Esq., Bar No. 4027
      Todd L., Bice, Esq., Bar No. 4534
      Debra L. Spinelli, Esq., Bar No. 9695
      Jordan T. Smith, Esq., Bar No. 12097
      400 South 7th Street, Suite 300
      Las Vegas, Nevada 89101

_Special Counsel for Gypsum Resources, LLC_