

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
June 30, 2021

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | Case No.: 19-14796-MKN |
| | Chapter 11 |
| GYPSUM RESOURCES MATERIALS, LLC, | |
| | Jointly Administered with |
| ☐ Affects Gypsum Resources Materials, LLC | Case No.: 19-14799-MKN |
| ☒ Affects Gypsum Resources, LLC | |
| ☐ Affects All Debtors | |
| Debtor. | |
| GYPSUM RESOURCES, LLC, a Nevada limited liability company, | Adv. Proc. No. 19-01105-MKN |
| Plaintiff, | Date:   June 24, 2021 |
| | Time:   3:00 p.m. |
| vs. | |
| CLARK COUNTY, a political subdivision of the State of Nevada; and CLARK COUNTY BOARD OF COMMISSIONERS, | |
| Defendants. | |
| CLARK COUNTY, a political subdivision of the State of Nevada; and CLARK COUNTY BOARD OF COMMISSIONERS, | |
| Counter-Claimants, | |
| vs. | |
| GYPSUM RESOURCES, LLC, a Nevada limited liability company, | |
| Counter-Defendant. | |

1

**MEMORANDUM DECISION ON (1) GYPSUM RESOURCES, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD FOR PRIVILEGE, AND (2) COUNTERMOTION FOR PROTECTIVE ORDER AND IN LIMINE TO LIMIT DISCOVERY AND ADMISSIBILITY OF LEGISLATIVE PRIVILEGED STATESMENTS AND TESTIMONY**[1]

On June 24, 2021, the court heard Gypsum Resources, LLC's Motion to Compel Production of Documents Improperly Withheld for Privilege ("Compel Motion"). Concurrently, the court heard the Countermotion for a Protective Order and in Limine to Limit Discovery and Admissibility of Legislative Privileged Statements and Testimony ("Protective Motion"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND[2]

On May 17, 2019, Gypsum Resources, LLC ("Debtor") filed a civil complaint against Clark County ("County") and the Clark County Board of Commissioners ("Board"), collectively referred to as the "Defendants." The Complaint was filed in the United States District Court for the District of Nevada ("USDC") and denominated Case No. 2:19-cv-00850-GMN-EJY ("USDC Case").[3] (Dkt. 1; AECF No. 1).[4]

---

[1] In this Memorandum, all references to "AECF" are to the numbers assigned to the documents filed in the above-captioned adversary proceeding. All references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All references to "Civil Rule" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence. All references to "NRS" are to the Nevada Revised Statutes.

[2] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the dockets in the above-captioned adversary proceeding and Case No. 2:19-cv-00850-GMN-EJY filed in the United States District Court for the District of Nevada. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Lawson v. Klondex Mines Ltd., 2020 WL 1557468, at *5 (D.Nev. March 31, 2020); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015).

[3] All references to "Dkt." are to the documents filed in the USDC Case.

[4] Neither the pleadings filed in connection with this action, nor the representations of any parties or their counsel, have suggested that the Debtor seeks damages or other relief against any individuals.

On July 26, 2019, Debtor filed a voluntary Chapter 11 petition in this bankruptcy court. (ECF No. 1).[5]

On August 12, 2019, Debtor filed a First Amended Complaint ("FAC") in the USDC Case. (Dkt. 9; AECF No. 1).[6]  The FAC alleged the following causes of action:

| | |
|---|---|
| <u>1st Claim for Relief</u>: | Petition for Writ of Mandamus |
| <u>2nd Claim for Relief</u>: | Equal Protection Violation[7] |
| <u>3rd Claim for Relief</u>: | Violation of 42 U.S.C. § 1983 |
| <u>4th Claim for Relief</u>: | Injunctive Relief |
| <u>5th Claim for Relief</u>: | Breach of Contract |
| <u>6th Claim for Relief</u>: | Breach of the Implied Covenant of Good Faith and Fair Dealing |
| <u>7th Claim for Relief</u>: | Inverse Condemnation |
| <u>8th Claim for Relief</u>: | Pre-Condemnation Damages |

Attached as an exhibit to the FAC was a "Stipulation and Settlement Agreement Pursuant to Court Ordered Settlement Conference; [Proposed] Order," signed on or about May 5, 2020 ("Settlement Agreement"), in a prior USDC action denominated Case No. CV-S-05-0583-RCJ. By the FAC, Debtor seeks mandamus, declaratory and injunctive relief, as well as various forms of damages, interest, attorneys' fees, and costs, arising from the Settlement Agreement.

On September 3, 2019, the County filed an Answer to the FAC and a motion seeking partial judgment on the pleadings.  (Dkt. 13 and 16; AECF No. 1).  In its Answer, the County asserted an affirmative defense that the Board "is not a sueable entity."  <u>Id.</u> at 10:1-2.  On that

---

[5] A related Chapter 11 proceeding was commenced by Gypsum Resources Materials, LLC, denominated Case No. 19-14796-MKN.

[6] Because the USDC Case was not an action or proceeding against the Debtor, the automatic stay under Section 362(a)(1) did not preclude the Debtor from continuing that matter.

[7] In support of the equal protection claim, paragraph 76 of the FAC alleged only as follows:  "Clark County and the Board intentionally, and without rational basis, treated Plaintiff differently from other similarly situated," and accordingly violated the equal protection clause of the Fourteenth Amendment of the United States Constitution.  N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)."

same day, the Board filed a motion to dismiss the FAC, also arguing it is not a suable entity. (Dkt. 15; AECF No. 1).

On September 4, 2019, Debtor filed a motion in the USDC asking that the USDC Case be referred to this bankruptcy court.  (Dkt. 17; AECF No. 1).

On October 22, 2019, Debtor and the County filed a joint discovery plan.  (AECF No. 8). The discovery plan stated, *inter alia*, that a demand for jury trial had been made and that the Debtor does not consent to a jury trial before the bankruptcy judge under 28 U.S.C. § 157(e).

On November 7, 2019, the Honorable Gloria M. Navarro entered an order granting in part and denying in part Debtor's motion, pursuant to which she referred the USDC Case to this court and dismissed as moot the pending motions filed by the County and the Board.  (Dkt. 28; AECF Nos. 1 and 11).[8]

On February 7, 2020, Defendants filed a motion to stay discovery in this adversary proceeding ("Discovery Stay Motion").  (AECF No. 17).

On February 10, 2020, Defendants filed a Motion for Judgment on the Pleadings under Civil Rule 12(c). ("12(c) Motion").  (AECF No. 20).

On March 13, 2020, Debtor filed its opposition to the Discovery Stay Motion.  (AECF No. 38).

On March 13, 2020, Debtor filed its opposition to the 12(c) Motion.  (AECF No. 39).

On March 19, 2020, Defendants filed their reply in support of their 12(c) Motion ("12(c) Reply").[9]  (AECF No. 44).

On March 19, 2020, Defendants filed their reply in support of their Discovery Stay Motion.  (AECF No. 46).

---

[8] According to a civil minute entry on November 16, 2019, the USDC Case has been stayed subject to periodic status reports.  (Dkt. 29).

[9] Defendants argued that the Debtor could not state a claim for violation of due process based on any alleged personal bias of Commissioner Justin Jones.  See 12(c) Reply at 10:10 to 13:20.  Defendants also argued that the Debtor could not state a claim for violation of equal protection.  Id. at 13:21 to 14:28.

On June 19, 2020, an order was entered granting in part and denying in part the 12(c) Motion ("12(c) Order"). (AECF 48).[10]

On June 26, 2020, a combined memorandum decision was entered on the Discovery Stay Motion and the Debtor's related motion to compel discovery, as well as a separate order denying the Discovery Stay Motion and denying the related motion to compel. (AECF Nos. 51, 52, and 54).

On July 6, 2020, Debtor filed a Second Amended Complaint for Damages; Petition for Writ of Mandamus, and Damages ("SAC"), including a jury demand. (AECF No. 61).[11]  A copy

---

[10] The 12(c) Order granted Defendants' motion as Debtor's equal protection and injunctive relief claims with leave to amend, but denied the motion as to all other claims including claims for violation of due process, for breach of contract, and for breach of implied covenant of good faith and fair dealing. The latter claims were based on an alleged breach of the prior Settlement Agreement. The court also addressed Defendants' threshold argument that the Board could not be sued at all because of its immunity for discretionary acts under NRS 41.032. The court concluded that an exception to discretionary act immunity applies for actions taken in bad faith as well as acts taken in violation of the U.S. Constitution. For that reason, the court concluded that a claim for relief could be stated against the Board in this adversary proceeding. See 12(c) Order at 7:26 to 9:13.

[11] The SAC again asserts claims based on the eight legal theories alleged in the FAC, but contains additional allegations intended to address the deficiencies with respect to the equal protection and injunctive relief theories. In support of the equal protection claim, Paragraph 73 of the SAC now alleges as follows: "Clark County and the Board intentionally, and without rational basis, treated Plaintiff differently from others similarly situated. Gypsum has been treated differently from every other major project development subject to Title 30 of the Clark County Code because it has endured unending delays in processing its development applications and has been forced to comply with extraordinary conditions, processes, procedures, public review meetings, hearings, and timelines dramatically beyond those defined in Title 30.20 Development Code 'Major Projects Application Processing.' Gypsum's applications have been stalled and delayed well-beyond any reasonable time period and past the historical average for all similarly sized projects considered and approved in Clark County. In an unprecedented move, Gypsum has been required to resolve right-of-way and access issues with a federal agency in advance of the Commission defining the "project" through the Title 30 Major Projects Specific Plan + PFNA process that establishes the project parameters, thresholds, and capacities. Previously approved developments processed through Clark County Major Projects have acquired right-of-way through the rational implementation of the development code following the Specific Plan + Public Facilities Needs Assessment step. Moreover, no other major projects developer has been subject to votes by biased decision-makers like Commissioner Justin Jones. Other similarly situated projects have not been discriminated against by Commissioner Jones in ways that Gypsum has and they have not suffered the conditions and delays imposed on

of the prior Settlement Agreement is attached to the SAC.  By the SAC, Debtor again seeks mandamus, declaratory and injunctive relief, as well as various forms of damages, interest, attorneys' fees, and costs, arising from the Settlement Agreement.

On July 20, 2020, Defendants filed an answer to the SAC, including a jury trial demand.[12]  (AECF No. 64).

On August 10, 2020, Defendants filed a motion for leave to file a counterclaim.  (AECF No. 66).

On August 25, 2020, Defendants filed a motion for protective order ("Prior Protective Motion").  (AECF No. 70).  In that motion, Defendants sought an order under Civil Rule 26(c) with respect to documents subpoenaed from the State of Nevada, Commission on Ethics ("Nevada Ethics Commission"), regarding its Advisory Opinion No. 19-003A, dated January 22, 2019 ("January 22, 2019 Advisory Opinion").  Debtor opposed the motion and it was heard on October 21, 2020.

On September 18, 2020, an order was entered approving a second revised stipulated discovery plan and scheduling order.  (AECF No. 88).  The revised discovery plan stated, *inter alia*, that a demand for jury trial had been made and that the Debtor does not consent to a jury trial before the bankruptcy judge under 28 U.S.C. § 157(e).  It further stated that all parties do

---

Gypsum.  Previous Major Projects similar in size and scope include, but are not limited to, Bonny Springs, Summerlin South, Mountain's Edge, and Southern Highlands.  Accordingly, Defendants have violated the equal protection clause of the Fourteenth Amendment of the Unites States Constitution.  N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)."  Compare FAC paragraph 76 quoted in note 7, supra.

[12] The answer includes forty-six affirmative defenses including a strange forty-sixth effort by the Defendants to "reserve the right to amend their answer to [the SAC} to allege additional affirmative defenses, if subsequent investigation so warrants."  The court is unaware that any such "right" exists because, *inter alia*, affirmative defenses typically are waived unless they are pled.  Defendants' twenty-fourth affirmative defense alleges that at all relevant times mentioned in the SAC the Defendants "were acting in good faith belief their actions were legally justified."  The twenty-eighth affirmative defense alleges that Defendants "made rational decisions in light of any objectively reasonable and conceivable state of facts."  The thirty-fifth affirmative defense alleges that the decisions of the Board "are strongly presumed to be in good faith, reasonable and done in the public interest."

not consent to the bankruptcy court entering a final judgment.[13]  Additionally, it stated that the case should be ready for trial by approximately September 2021 and should take approximately ten days.

On October 5, 2020, a Stipulated Confidentiality and Protective Order was entered ("Stipulated Confidentiality Order").  (AECF No. 89).

On November 23, 2020, an order was entered granting the motion for leave to file a counterclaim as unopposed.[14]  (AECF No. 90).

On November 30, 2020, Defendants filed a Counter-Claim Against Plaintiff Gypsum Resources, LLC ("Counterclaim").  (AECF No. 93).[15]

---

[13] It is not entirely clear why the Debtor ever requested the USDC to refer this civil action to the bankruptcy court.  Debtor's own complaint demanded a jury trial but the Debtor would not consent to a bankruptcy judge presiding over a jury trial.  Debtor's request to the USDC did not disclose that it would not give that consent.  Debtor later reported that the parties to the civil action, all of whom had demanded a jury trial, would not consent to the bankruptcy court entering a final judgment.  Debtor's request to the USDC did not disclose whether it would consent to the bankruptcy court entering a final judgment.  Because the civil action itself had been brought by the Debtor rather than against the Debtor, proceeding in the USDC was not barred by the automatic stay.  See discussion at note 6, supra.  Defendants likely would have had no difficulty obtaining relief from stay to file their counterclaims.  Debtor's claims against the Defendants are property of the Chapter 11 bankruptcy estate, but adjudicating those claims in the bankruptcy court seems to be the least efficient and most expensive way of going about it.

[14] Because the filing of a counterclaim was specifically requested and granted by the bankruptcy court, relief from the automatic stay was not required.

[15] The prayer of the Counterclaim seeks an award of compensatory and special damages, pre-judgment and post-judgment interest, other legal expenses, attorneys' fees and costs of suit. Defendants' general factual allegations are set forth in paragraphs 5 through 120 of their Counterclaim.  Paragraphs 12 through 67 sets forth the Defendants' description of the Settlement Agreement between the parties.  Paragraphs 89 through 93 sets forth the Defendants' description of the participation of Commissioner Justin Jones and the issuance of the January 22, 2019 Advisory Opinion by the Nevada Ethics Commission.  Paragraphs 96 through 98 sets forth Defendants' description of the Board's reliance on recommendations made by the Clark County Comprehensive Planning staff.  Based on the various general allegations, Defendants allege two claims against the Debtor: breach of contract and breach of implied covenant of good faith and fair dealing with respect to the same Settlement Agreement. In other words, Defendants now affirmatively seek monetary relief against the Debtor based on factual allegations set forth in its Counterclaim.

On December 15, 2020, an order was entered denying Defendants' Prior Protective Motion ("Prior Protective Order").[16]  (AECF No. 99).

On December 23, 2020, Debtor filed an answer to the Counterclaim.  (AECF No. 105).[17]

On April 15, 2021, an order was entered approving a stipulation to extend discovery deadlines, setting, *inter alia*, a bar date of August 19, 2021, for discovery to be completed. (AECF No. 109).

On April 23, 2021, Debtor filed the instant Compel Motion, along with the supporting declaration of its counsel, Jordan T. Smith ("First Smith Declaration").[18]  (AECF Nos. 114 and 115).

---

[16] The court rejected Defendants' assertion that information from the Nevada Ethics Commission that may be confidential under NRS 281A.685(1) is also privileged from disclosure through discovery.  See Prior Protective Order at 11:9 to 12:13.  Moreover, the court also concluded that the Defendants had waived any privilege concerning the January 22, 2019 Advisory Opinion because Defendants had placed the matter at issue in their Counterclaim and their affirmative defenses to the SAC.  Id. at 12:16 to 16:11.

[17] As of December 23, 2020, Defendants had filed an answer to the SAC, and Debtor had filed an answer to the Counterclaim.  As a result, the parties vigorously contest the merits of the claims and defenses alleged in both pleadings, but apparently no longer dispute the sufficiency of the pleadings.  The breach of contract and breach of implied covenant of good faith and fair dealing claims alleged in the Counterclaim continue to be based on the same Settlement Agreement alleged in the SAC. Neither side has sought summary judgment, discovery has not closed, and the merits of the parties' respective claims for affirmative relief have not been adjudicated.

[18] Attached to the First Smith Declaration are Exhibits 1 through 5 offered in support of the Compel Motion.  Exhibit 5 is a copy of an updated privilege log provided by the Defendants on March 16, 2021 ("March 16 Privilege Log").  The adversary proceeding docket number for that exhibit is 115-5, from pages 4 of 11 through 4 of 7.  There is a narrow column at the far left of the exhibit listing email numbers 1 through 68.  The remaining columns of the exhibit are labeled A through I.  Columns A and B provide the beginning and ending "Bate stamp" page number of the printout for each email communication.  Columns C, D, E, and F provide the names of the recipient, sender, and additional recipients of each email.  Columns G and H provide the transmission date and subject matter of each communication.  Column I identifies that privilege asserted by the Defendants and asserted basis for which portions of the subject email was produced in redacted form.  For ease of reference, the court will refer in this Memorandum to the numbers assigned to the communication on the privilege log rather than the specific Bate stamp numbers or range.

On May 7, 2021, Defendants filed an opposition to the Compel Motion ("Compel Opposition"), along with an appendix.  (AECF Nos. 116 and 118).  Exhibit "A" to that appendix is a declaration of  their counsel, Thomas Dillard ("First Dillard Declaration").[19]

On May 7, 2021, Defendants filed another opposition that included the instant Protective Motion as a "countermotion" to the Compel Motion, and also supported by a separate appendix.  (AECF Nos. 120 and 122).  The exhibits attached to the separate appendix are identical to the exhibits attached to the appendix accompanying the Compel Opposition, including the First Dillard Declaration.

On May 27, 2021, Debtor filed an opposition to the Protective Motion ("Protective Opposition") that attached another declaration of its counsel ("Second Smith Declaration").[20] (AECF No. 133).

On June 3, 2021, Debtor filed a reply in support of its Compel Motion ("Compel Reply").  (AECF No. 135).[21]

On June 18, 2021, Defendants filed a reply in support of their Protective Motion ("Protective Reply").  (AECF No. 164).[22]

On June 18, 2021, a response to the Compel Motion was filed by Justin Jones ("Jones Response").  (AECF No. 166).[23]

---

[19] In addition to the First Dillard Declaration, the appendix includes Exhibits B through G offered in support of the opposition.

[20] Attached to the Second Smith Declaration are Exhibits 6 through 30 offered in support of the Compel Motion.

[21] In support of its Compel Motion, Debtor makes an assertion unsupported by any of the declarations and materials before the court, but refers only to an online video of a planning commission meeting that took place in 2016.  See Compel Reply at 6:20-24.  The court is unaware of any authority that would permit the court to view such materials.

[22] Attached to the Protective Reply are Exhibits A through E, including another declaration of counsel ("Second Dillard Declaration").

[23] Attached to the Jones Response is a declaration of his counsel, Terry Coffing, along with Exhibits A through D, which includes a copy of an opinion from the Nevada Commission on Ethics dated June 22, 2019.

On June 23, 2021, Debtor filed a response to the Jones Response ("Debtor's Jones Response"). (AECF No. 173).[24]

### APPLICABLE LEGAL STANDARDS

A party seeking discovery is not required to demonstrate that the information sought is admissible at trial, but only that the information sought is reasonably calculated to lead to discovery of admissible evidence. See FED.R.CIV.P. 26(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable."). See generally 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2008 ("8 Wright & Miller") (3rd ed. April 2021 update) ("[T]he fact that the information sought is hearsay or is otherwise inadmissible at trial does not bar discovery if it is relevant to the subject matter of the action and there is a reasonable possibility that the information sought may provide a lead to other evidence that will be admissible. Questions of admissibility are best left until trial.") (footnotes omitted; emphasis added).

A party opposing discovery bears the burden of showing why a discovery request should be denied. See Prior Protective Order at 8, quoting Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund, 2011 WL 4573349, at *5-6 (D.Nev. Sept. 29, 2011). Compare 8 Wright & Miller, supra, § 2035 ("[Civil Rule 26(c)] requires good cause to be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefore. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause."). That burden includes demonstrating that a privilege applies to the requested discovery at which point the requested information would be outside the scope of discovery. See FED.R.CIV.P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is a follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…") (emphasis added). The responding party must both demonstrate that a privilege applies and timely assert the privilege. See 8 Wright & Miller, supra, § 2016.1 ("An existing

---

[24] Attached to the Debtor's Jones Response is another declaration of Jordan Smith ("Third Smith Declaration"), to which is attached Exhibits 1 through 6.

privilege exemption from discovery must be raised in a proper fashion to be effective in justifying a refusal to provide discovery.  Failure to assert the privilege objection correctly can mean that the privilege is waived.").  Compare In re Hotels Nevada, LLC, 458 B.R. 560, 573 (Bankr. D. Nev. 2011)("Under federal law, SDW bears the burden of establishing the applicability of the [attorney-client] privilege.").

## DISCUSSION[25]

By the instant Compel Motion,  Debtor seeks an order under Civil Rule 37(a)(1) requiring the Defendants to produce unredacted copies of documents 2, 3, 4, 5, 6, 7, 9, 11, 38, 39, 40, 41, 44, 48, 49, 51, 65, 66, 67 and 68 identified on the March 16 Privilege Log.  Except for documents 65, 66, 67 and 68, Defendants describe the basis for redaction as "Legislative/Executive Privilege."  For documents 65, 66, 67 and 68, Defendants describe the basis as "Attorney-Client Privilege: Atty/Client Communication."

By the instant Protective Motion, Defendants seek not only to deny the relief sought by the Compel Motion, but also an order under Civil Rule 26(c) "to limit discovery and the evidentiary record in this case in keeping with the aforementioned privilege and thereby preclude any discovery and admissibility pertaining to current and former Clark County Commissioners subjective motivations, intents and deliberations pertaining to Gypsum's major project development applications."  Protective Motion at 20:9-13.  Defendants identify the

---

[25] At the hearing in this matter, Debtor's counsel acknowledged that the admissibility at trial of any evidence obtained through discovery may be impacted by whether the parties' claims are tried before a jury or a judge.  The parties' respective and various claims for damages on contract, condemnation, and constitutional violation theories typically are determined by a jury.  Debtor's claims for a writ of mandamus as well as an injunction seek equitable relief which typically are determined by a judge.  In this instance, the Debtor and the Defendants have demanded a jury trial, and at least the Debtor has stated that it does not consent to the bankruptcy judge conducting a jury trial.  Apparently, there also is no consent by all parties to the bankruptcy court entering a final judgment.  Under these circumstances, it appears that this proceeding eventually will return to the USDC for a jury trial at which time the USDC will be in the best position to determine whether otherwise admissible evidence, if any, disputed by the parties, should be allowed before a jury. Likewise, the USDC will be in the best position to determine whether any required jury instructions must be tailored to address the concerns raised by the parties. Although entities related to the Debtor are not strangers to this bankruptcy court, it is not readily apparent why the Debtor requested that the instant litigation be referred to the bankruptcy court.

1    "aforementioned privilege" as a "legislative" privilege that permits redactions of the email

2    communications identified in the March 16 Privilege Log.  Because of the asserted legislative

3    privilege, Defendants also argue that "Gypsum is further precluded from any inquiry at all into

4    the mental process or rationale for any of the BCC members' actions beyond the public meetings

5    and the official record.  Clark County, pursuant to the privilege and corollary official record

6    limitation, should be protected from additional documentary discovery as well as deposition

7    inquiry related to the subjective intent and mental impressions of any current of (sic) former

8    Clark County Commissioners." Id. at 20:1-6.

9         There is no apparent dispute that the Debtor propounded discovery under Civil Rule 34

10   requesting the production of the email communications that are the subject of the Compel

11   Motion.  There is no dispute that the parties are operating under a Stipulated Confidentiality

12   Order that governs the disclosure and use of privileged materials sought or received during the

13   course of discovery.  There is no dispute that the parties have proceeded with other forms of

14   discovery, including the issuance of subpoenas to non-parties such as the Nevada Ethics

15   Commission and taking depositions of persons who are not named as parties such as

16   Commissioner Justin Jones.  There is no dispute that Defendants have produced various

17   documents, including copies of email communications, during the course of discovery.  There is

18   no dispute that Defendants have produced only redacted copies of the communications that are

19   the subject of the Compel Motion.

20        There is no dispute that the Defendants previously asserted in their 12(c) Motion that the

21   Board could not even be sued by the Debtor due to its alleged immunity for discretionary acts

22   under NRS 41.032.  There is no dispute that the court rejected Defendants' assertion and

23   concluded that an exception for discretionary act immunity applies to actions taken in bad faith

24   or in violation of constitutional rights. See discussion at note 10, supra.[26]  There is no dispute

25

26        [26] Recital M to the Settlement Agreement states as follows:  "The County and Gypsum
          recognize through this Agreement there are no guarantees, commitments or binding obligations
27        by County to approve a Major Project application, or to approve any uses or increased densities
          proposed by Gypsum as part of any Major Project application and that the County retains
28        discretion regarding any application submitted by Gypsum as a result of this Agreement."  This

that the court previously concluded that the Debtor could plausibly state claims for relief for violations of due process as well as violations of equal protection under the U.S. Constitution. <u>See</u> discussion at notes 9 and 10, <u>supra</u>.  There is no dispute that the Defendants previously asserted in its Prior Protective Motion that confidential information under NRS 281A.685(1) subpoenaed from the Nevada Ethics Commission concerning its January 22, 2019 Advisory Opinion was privileged from disclosure through discovery.  <u>See</u> discussion at note 16, <u>supra</u>. There is no dispute that the court previously concluded that such confidential information is not privileged from being disclosed through discovery and also that Defendants had waived any privilege by placing the January 22, 2019 Advisory Opinion at issue in their Counterclaim and affirmative defenses.  <u>Id.</u>[27]

Against this backdrop, the court considers Defendants' assertion of a legislative privilege in opposition to the Compel Motion and in support of its Protective Motion.

### A.  <u>The Legislative Privilege Cases Cited by the Parties.</u>

In connection with both the Prior Protective Motion and the 12(c) Motion, both parties addressed the degree to which claims against the Defendants could be pursued in relation to the prior Settlement Agreement.  As previously noted, both parties have alleged that the Settlement Agreement was breached by the other party, and that monetary damages should be awarded.  The parties have pursued discovery for a significant period of time after their respective claims were placed at issue, and the court is now asked to impose certain limits.  The focus of the current skirmish is whether Defendants' assertion of legislative privilege should now bar both certain pretrial discovery propounded by the Debtor as well as the introduction of evidence at a trial in

recital appears to preserve discretion over such applications but does not appear to create a contractual immunity for actions taken in bad faith or in violation of constitutional rights.

[27] Whether the Counterclaim was compulsory or permissive under Civil Rule 13(a) and (b) is immaterial.  Defendants voluntarily filed the Counterclaim to affirmatively seek damages and other relief against the Debtor, just like the Debtor voluntarily filed the SAC.  Defendants therefore have the burden of proof on their factual allegations and must provide discovery of relevant information.  Filing of the Counterclaim, as well as the SAC, constitutes a certification by the respective parties and their counsel, *inter alia*, that the allegations and factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for investigation or discovery.  <u>See</u> Fed.R.Civ. P. 11(b)(3).

which this court likely will not preside.  Both parties have submitted written memoranda citing a variety of decisions addressing the issue of legislative privilege.  The court will not address all of the cases cited by the Debtor[28] and the Defendants,[29] but will discuss the principal cases most informative of the current dispute.

[28] In addition to the principal cases summarized below, Debtor cites other decisions in support of limiting assertion of the legislative privilege.  See Compel Motion at 9-12, citing Scalia v. Int'l Longshore & Warehouse Union, 336 F.R.D. 603 (N.D. Cal. 2020); N. Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118 (N.D. Cal. 2003);  DR Partners v. Bd. of Cnty. Com'rs of Clark Cnty., 6 P.3d 465 (Nev. 2000); United States v. Fernandez, 231 F.3d 1240 (9th Cir. 2000); Clark Cnty. School Dist. v. Las Vegas Review-Journal, 429 P.3d 313 (Nev. 2018); Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D. Md.1992); 2BD Associates Ltd. Partnership v. County Com'rs for Queen Anne's County, 896 F. Supp. 528 (D.Md.1995); Front Royal and Warren County Indus.Park Corp. v. Town of Front Royal, Va., 865 F.2d 77 (4th Cir. 1989); Trevino By and Through Cruz v. Gates, 17 F.3d 1189 (9th Cir.1994), superseded by 23 F.3d 1480; Crymes v. DeKalb County, Ga., 923 F.2d 1482 (11th Cir.1991); Cinevision Corp. v. City of Burbank, 745 F.2d 560 (9th Cir.1984), cert. denied, 471 U.S. 1054 (1985); Stone's Auto Mart, Inc. v. City of St. Paul,Minn., 721 F. Supp. 206 (D. Minn.1989); Fralin & Waldron, Inc. v. Henrico County, Va., 474 F. Supp. 1315 (E.D.Va. 1979); Cutting v. Muzzey, 724 F.2d 259 (1st Cir.1984); Citizens of Overton Park v. Volpe, 401 U.S. 402 (1971) abrogated on othergrounds by Califano v. Sanders, 430 U.S. 99 (1977).  See also Compel Reply at 3-4, citing Scott v. Greenville Cty., 716 F.2d 1409 (4th Cir. 1983).  See also Debtor's Jones Response at 3-14, citing Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I., 917 F. Supp. 91 (D.N.H. 1996); Manzi v. DiCarlo, 982 F. Supp. 125 (E.D.N.Y. 1997); Nevada Restaurant Service, Inc. v. Clark County, 2016 WL 1611109 (D. Nev.,Apr. 20, 2016); Nevada Restaurant Service, Inc. v. City of Las Vegas, 2018 WL 3973402 (D. Nev., Aug. 20, 2018); Citizens for a Public Train Trench Vote v. City of Reno, 118 Nev. 574, 53 P.3d 387 (2002); United States v. Renzi, 651 F.3d 1012 (9th Cir. 2011); Scott v. Greenville County, 716 F.2d 1409 (4th Cir. 1983); Board of Supervisors of Fluvanna County v. Davenport & Co.,LLC, 742 S.E.2d 59 (Va. 2013); Michigan State A. Phillip Randolph Institute v. Johnson, 2018 WL 1465767 (E.D. Mich., Jan. 4, 2018).  See also Protective Opposition at 14-17, citing United States v. SDI Future Health, Inc., 464 F. Supp. 2d 1027 (D. Nev. 2006).

[29] In addition to the principal cases summarized below, Defendants cite other decisions in support of their assertion of the legislative privilege.  See Compel Opposition at 11-19, citing Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162 (1810); Soon Hing v. Crowley, 113 U.S. 703 (1885); Dombrowski v. Eastland, 387 U.S. 82 (1967); Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I., 917 F.Supp. 91 (D.N.H. 1996); United States v. Helstoski, 442 U.S. 477 (1979); Coffin v. Coffin, 4 Mass. 1 (1808); Knights of Columbus v. Town of Lexington, 138 F. Supp.2d 136 (D. Mass. 2001); Kay v. City of Rancho Palos Verdes, 2003 WL 25294710 (C.D.Cal. Oct. 10, 2003); Searingtown Corp. v. Village of North Hills, 575 F. Supp. 1295 (E.D.N.Y. 1981); Kenwood Gardens Condominiums, Inc. v. Whalen Properties, LLC, 144 A.3d 647 (Md. 2016); Orange v. County of Suffolk, 855 F. Supp. 620 (E.D.N.Y. 1994); Novak v. City of High Point, N.C. App. LEXIS 1383 (N.C. Ct. App., 2003); Marylanders for Fair Representation, Inc. v. Schaefer, 144

In <u>United States v. Morgan</u>, 313 U.S. 409 (1941), fifty civil actions were commenced against the United States in April of 1930, challenging an order of the Secretary of Agriculture that fixed the maximum rates and charges for stockyard services.  The petitions in each case alleged that the order exceeded the Secretary's authority under the federal Packers and Stockyards Act, 7 U.S.C. §201, *et seq.*, and sought to enjoin enforcement of the order.  Eventually, the order was enforced against certain parties by requiring excess charges to be impounded.  The U.S. District Court for the Western District of Missouri, however, ordered that the impounded funds be remitted to the petitioners.  32 F.Supp. 546 (W.D. Mo. 1940).  That decision was reversed by the Supreme Court which, *inter alia*, rejected claims that the Secretary's public comments reflected bias that disqualified him from making a valid decision to issue the subject order.  313 U.S. at 420-21.[30]  The Court also observed that the district court improperly allowed the petitioners to take the Secretary's deposition by appearing in person at trial.  <u>Id.</u> at 421-22.  The court compared the requirement of such trial testimony to requiring a judicial officer to testify at trial:  "But the short of the business is that the Secretary should never

---

F.R.D. 292 (D. Md. 1992); In re Hubbard, 803 F.3d 1298 (11th Cir. 2015); Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408 (D.C. Cir. 1995); Illinois RSA No. 3 v. County of Peoria, 963 F.Supp. 732 (C.D.Il1.1997); BellSouth Mobility v. Gwinnett County, 944 F.Supp. 923 (N.D.Ga.1996); AT&T Wireless v. City Council of Virginia Beach, 979 F.Supp. 416 (E.D.Va.1997).  <u>See also</u> Jones Response at 16-19, <u>citing</u> McCray v. Maryland DOT, 741 F.3d 480 (4th Cir. 2014); Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732 (C.D. Ill. 1997).  <u>See</u> Protective Motion at 13-19 [same cases cited in Compel Opposition].  <u>See also</u> Protective Reply at 7-13, <u>citing</u> In re Hubbard, 803 F.3d 1298 (11th Cir. 2015).  At the hearing, Defendants requested that the court also consider certain authorities cited in connection with their 12(c) Motion and Discovery Stay Motion.  <u>See</u> 12(c) Reply at 10-11, <u>citing, e.g.,</u> Tumey v. Ohio, 273 U.S. 510 (1927).  <u>See</u> Discovery Stay Reply at 12-13, <u>citing</u>, Kaahumanu v. County of Maui, 315 F.3d 1215 (9th Cir. 2003); San Pedro Hotel v. City of Los Angeles, 159 F.3d 470 (9th Cir.1998); Kuzinich v. County of Santa Clara, 689 F.2d 1345 (9th Cir.1982), Acierno v. Cloutier, 40 F.3d 597 (3d Cir.1994); Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D. Md. 1992).

[30] Perhaps apropos of the time, the Court observed:  "Cabinet officers charged by Congress with adjudicatory functions are not assumed to be flabby creatures any more than judges are.  Both may have an underlying philosophy in approaching a specific case. But both are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.  <u>Nothing in this record disturbs such an assumption</u>."  313 U.S. at 421 (emphasis added).

have been subjected to this examination. The proceeding before the Secretary 'has the quality resembling that of a judicial proceeding.'…Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to prove the mental processes of the Secretary.'" Id. at 422.[31]

In Tenney v. Brandhove, 341 U.S. 367 (1951), an individual (Brandhove) sued a California state senator (Tenney) along with a legislative committee he chaired (California Senate Fact-Finding Committee on Un-American Activities), in addition to the mayor of San Francisco (Robinson), to recover damages for violation of civil rights. The damages stemmed from the alleged statements and related conduct of Tenney, Robinson, and others during the course of a committee hearing to investigate the actions of various individuals suspected of or simply baldly accused of unpatriotic activity. The suit was brought in the U.S. District Court for the Northern District of California under 8 U.S.C. §§ 43 and 47(3), but was dismissed for failure to state a claim for relief. The Ninth Circuit reversed and permitted the action to proceed. On certiorari, the Supreme Court reversed the Ninth Circuit and affirmed the lower court decision. The Court looked to whether 8 U.S.C. § 43 applied to the conduct of the named defendants. Because the complaint alleged actions by the defendants "in the sphere of legitimate legislative activity," the majority concluded that no claim was stated under 8 U.S.C. § 43.

The action in Tenney was dismissed at the pleading stage. There was no counterclaim asserted by the defendants seeking damages against the individual plaintiff. There were no allegations by the defendants characterizing their conduct in order to obtain affirmative relief against the plaintiff. In his concurring opinion, Justice Black observed:

> It is not held that the validity of legislative action is coextensive with the personal immunity of legislators. That is to say, the holding that the chairman and the other members of his Committee cannot be sued in this case is not a holding that their alleged persecution of

---

[31] At the time the proceedings in Morgan were commenced in April 1930, the Federal Rules of Civil Procedure did not exist. Adopted in 1938 pursuant to the Rules Enabling Act of 1934, 28 U.S.C. § 2071, et seq., the Civil Rules embody a liberal discovery approach by which parties can be compelled to provide evidence that supports their opponent's case. The liberality of the discovery provisions of the Civil Rules is captured in the language of Civil Rule 26(b)(1) that does not require information to be admissible in order to be discoverable.

Brandhove is legal conduct.  Indeed, as I understand this decision, there is still much room for challenge to the Committee action.  <u>Thus, for example, in any proceeding instituted by the Tenney Commission to fine or imprison Brandhove on perjury, contempt or other charges, he would certainly be able to defend himself on the ground that the resolution creating the Committee or the Committee's actions under it were unconstitutional and void.</u>

341 U.S. at 379-380 (emphasis added).

In <u>Village of Arlington Heights v. Metropolitan Housing Development Corp</u>., 429 U.S. 252 (1977), a nonprofit developer of low-income housing sued a village in Illinois for denying a rezoning request. Plaintiff sued for declaratory and injunctive relief in the U.S. District Court for the Northern District of Illinois.  Under 42 U.S.C. § 1983 and 42 U.S.C. § 3601, *inter alia*, alleging that the village had acted in violation of the federal Civil Rights Act and federal Fair Housing Act.  The district court conducted a bench trial and concluded that plaintiff had failed to demonstrate that the village officials had discriminated against racial minorities in denying the rezoning request.  373 F.Supp. 208, 211 (N.D.Ill. 1974).  The district court expressly observed that there was "no direct evidence by which to determine the motives or mental processes of the trustees, and plaintiffs depend on circumstantial evidence." <u>Id</u>. at 210.  It further concluded that the plaintiffs had "failed to carry their burden of proving discrimination by defendants against racial minorities as distinguished from the under-privileged generally." <u>Id</u>.  The district court also distinguished between the motives of citizens opposed to low-income housing in their neighborhoods and the basis for the decision of village officials to deny rezoning: "The weight of the evidence proves that the defendants were motivated with respect to the property in question by a legitimate desire to protect property values and the integrity of the Village's zoning plan." <u>Id</u>. at 211.[32]  On appeal, the Seventh Circuit reversed, concluding that the denial had a racially

---

[32] The district court in <u>Village of Arlington Heights</u> also commented as follows: "Lest plaintiffs conclude that they are faced with an insurmountable problem of proof, they are referred to a recent decision by this court in the case of Cousins et al. v. City Council of the City of Chicago et al., D.C., 361 F.Supp. 530.  There the plaintiffs succeeded in proving that the defendant City discriminated against a black minority when it established the boundaries of the 7th Ward, as evidenced by certain acts and statements of an alderman, changes wrought in a pre-existing ward map, and certain circumstantial evidence.  This decision, incidentally, is on appeal." 373 F.Supp. at 211.  In the <u>Cousins</u> case, the evidence before the trial court <u>included</u>

discriminatory effect unsupported by a compelling public interest, in violation of equal protection and the Civil Rights Act.  517 F.3d 409, 414-15 (7th Cir. 1975).

On certiorari, the Supreme Court in Village of Arlington Heights reversed and remanded for the district court to determine whether the village had violated the Fair Housing Act.  429 U.S. at 371.  Like the circuit court, the Supreme Court also reviewed the evidence considered by the district court.  The Court expressed its concern about intrusions into the decision-making processes of legislative and executive officials.  Id. at 369 n. 18.  The Court also observed as follows:  "Respondents complain that the District Court unduly limited their efforts to prove that the Village Board acted for discriminatory purposes, since it forbade questioning Board members about their motivation at the time they cast their votes.  We perceive no abuse of discretion in the circumstances of this case, even if such an inquiry into motivation would otherwise have been proper. See n. 18, supra.  Respondents were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision.  In light of respondents' repeated insistence that it was effect and not motivation which would make out a constitutional violation, the District Court's action was not improper."  Id. at 270 n. 20 (emphasis added).

In City of Las Vegas v. Foley, 747 F.2d 1294 (9th Cir. 1984), the City of Las Vegas was sued by a number of adult businesses that challenged the sudden enforcement of certain zoning ordinances.  Plaintiffs asserted claims under 42 U.S.C. § 1983 alleging that their rights to free speech and expression, and due process, were violated under the First and Fourteen Amendments.  The U.S. District Court for the District of Nevada granted a preliminary injunction in favor of the plaintiffs, but the Ninth Circuit reversed on appeal.  See Lydo Enterprises, Inc. v. City of Las Vegas, 745 F.2d 1211 (9th Cir. 1984).  After discovery in the action was completed, the plaintiffs sought to reopen discovery to depose city officials regarding their motives for enacting the zoning ordinance in question, based on the Supreme Court's subsequent denial of certiorari of the Ninth Circuit's prior decision in Tovar v. Billmeyer, 721

_____

live witness and deposition testimony of the city officials and support staff involved in the legislative action of determining the boundaries of the city wards at issue.  361 F.Supp at 531.

F.2d 1260 (9th Cir. 1983), <u>cert. denied</u>, 105 S.Ct. 223 (1984).  After the district court in <u>Foley</u> denied the city's motion for a protective order to prevent such depositions, the city sought a writ of mandamus from the Ninth Circuit to require the district court to issue the protective order. The Ninth Circuit granted a writ of mandamus directing the district court to "determine whether and to what extent deposition testimony may be useful, limited to establishing relevant objective circumstances under with the ordinance was enacted, and to grant an appropriate protective order consistent with this opinion."  747 F.2d at 1299.

The civil action in <u>Foley</u> involved plaintiffs seeking to prevent the city from suddenly enforcing previously enacted zoning ordinances that would cause economic damage to their businesses.  Plaintiffs alleged that the city's action violated their rights under the U.S. Constitution.  The record does not reflect that counterclaims were asserted by the city seeking damages against the plaintiffs.  Moreover, the Ninth Circuit expressly allowed the district court to determine whether the deposition testimony of city officials would be useful to establishing the relevant objective circumstances surrounding the legislative activity at issue in the case.

In <u>Kawaoka v. City of Arroyo Grande</u>, 17 F.3d 1227 (9th Cir. 1994), the individual plaintiffs sued the city in which they lived, as well as the city council, and individual members of the city council.  Under 42 U.S.C. § 1983, plaintiffs alleged that defendants' actions in adopting certain land use plans violated their rights to substantive due process and equal protection. Testimony and statements were available from city council members, and various officials involved in the plans.  796 F.Supp. 1320, 1328.  Depositions apparently were taken of the mayor, city engineer, deputy public works director, long range planner, and planning director.  <u>Id.</u> at 1328-29.  Plaintiffs' constitutional challenges to the city's actions as applied and on their face were rejected on summary judgment by the U.S. District Court for the Central District of California.  <u>Id.</u> at 1333.  The district court also found that the individual members of the city council were immune from being sued because their actions in approving a land use plan for the entire community was legislative in nature.  <u>Id.</u> at 1332.  The Ninth Circuit affirmed.  With respect to the immunity of individual city council members, the Ninth Circuit panel observed:

> The district court correctly noted that zoning enactments that affect large populations are legislative in nature.  *Kuzinich v. County of*

*Santa Clara*, 689 F.2d 1345, 1349-50 (9th Cir. 1982). Adopting the general plan and water moratorium, both of which affected the entire community of Arroyo Grande, were legislative acts. <u>Appellants provide no evidence that suggests that the City acted separately from the general plan amendment to single out the Kawaokas for special treatment.</u> *See Harris*, 904 F.2d at 501-02 (city acts to rezone plaintiff's land, without notice, after third party requested a change in zoning); *see also Bateson*, 857 F.2d at 1303 (city's refusal to issue specific building permit is executive act).

17 F.3d at 1239 n. 11 (emphasis added).

The action in <u>Kawaoka</u> was decided on cross-motions for summary judgment. The decision addressed whether the city officials were entitled to immunity rather than whether legislative privilege prevented discovery from being taken. To the contrary, the district court decision indicates that discovery actually was taken from the various city officials and employees. On plaintiffs' equal protection claim, the district court concluded and the Ninth Circuit agreed, that no genuine dispute of fact had been raised to suggest that the city discriminated against the plaintiffs on the basis of race or that the plaintiffs were irrationally singled out for different treatment. 17 F.3d at 1240. There was no counterclaim asserted by the defendants, however, seeking damages against the individual plaintiffs.

In <u>Equal Employment Opportunity Commission v. Washington Suburban Sanitary Commission</u>, 631 F.3d 174 (4th Cir. 2011), a federal agency charged with the investigation and possible enforcement of employee claims brought under the Age Discrimination in Employment Act subpoenaed personnel information from a Maryland public utility. The subpoena sought documents regarding the utility's decision to restructure its information technology department. When the utility declined, an action was brought in the U.S. District Court for the District of Maryland. The district court overruled the utility's assertion of legislative immunity and privilege, and ordered compliance with the subpoena. The Fourth Circuit affirmed because the subpoena only sought documentary information for investigatory purposes, not to pursue a violation. 631 F.3d at 182. Moreover, the subpoena did not seek to compel testimony of utility officials. <u>Id.</u> Because the subpoena sought information for potentially non-privileged acts

20

outside of legislative activity, the circuit court concluded that the legislative immunity and

privilege was not at issue.  In reaching this balance, the circuit panel observed:

> Litigation by its nature features dark and bright sides of the moon.
> The dark side of subpoenas such as this lies in their threat to needed
> bureaucratic innovation and restructuring and in the potential threat
> to vitality and independence of the legislative branch.  Legislative
> immunity and legislative privilege protect legislators from the perils
> of individual liability and the distractions of compulsory process.
> We have these doctrines for apparent and important reasons.  The
> public must be able to make its electoral selection from a wealth of
> qualified candidates, not simply the few undeterred or unaffected by
> the threat of financial liability, and those selected must be able to
> focus their entire energies on discharging their public duties, free
> from concerns about personal consequences and the hassles of
> lawsuits.
>
> The other, brighter lunar side of course is the ability of Americans
> to work without the discrimination that the legislative branch has
> itself condemned.  And the modified subpoena thus far advances this
> legislative intent without impairing legislative independence.  At
> this preliminary stage of the investigation the EEOC has not sought
> testimony from the [utility commissioners] or from county council
> members, and we do not yet know whether its investigation will
> even evolve into a lawsuit or whether defending such a suit would
> require legislators' testimony or involvement.  The EEOC has also
> demonstrated its willingness to avoid  infringing on potentially
> privileged territory, and the remaining materials it seeks appear to
> go largely to administrative employment decisions.  On the present
> record, we see no basis for not enforcing the subpoena.

631 F.3d at 184-85 (emphasis added).

In Lee v. City of Los Angeles, 908 F.3d 1175 (9th Cir. 2018), the individual voters

brought suit under 42 U.S.C. §1983 alleging that the redistricting plan for Los Angeles city

council districts violated the equal protection clause. The consolidated actions named the City of

Los Angeles as well as individual officials involved in formulating the plan for the voting

districts.  Plaintiffs alleged that the redistricting plan violated the equal protection clause of the

U.S. Constitution. The complaint sought declaratory, injunctive and other equitable relief, as

well as the recovery of attorney's fees.  Defendants answered but did not counterclaim for

affirmative relief.  Evidence was presented on summary judgment that certain non-voting

members of the city's redistricting commission had expressed opinions on racial composition as a factor in redistricting, but that the evidence did not establish that race was the predominant or only motivating factor.  88 F.Supp.3d 1140, 1152. The district court rejected the equal protection challenge on summary judgment, concluding that no genuine dispute of fact had been raised to suggest that the city's plan subordinated or ignored traditional redistricting criteria.  Id. at 1154.

The Ninth Circuit in Lee affirmed the grant of summary judgment.  The circuit also affirmed the district court's order granting a protective order to prevent local officials from being deposed.  The circuit panel concluded that the city's claim of legislative privilege barred the voters from deposing city officials involved in the redistricting process.  908 F.3d at 1186-87, citing Tenney, 341 U.S. at 369-379.  The panel observed that "Like their federal counterparts, state and local officials undoubtedly share an interest in minimizing the 'distraction' of 'divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation.' …The rationale for the privilege – to allow duly elected legislators to discharge their public duties without concern for adverse consequences outside the ballot box – applies equally to federal, state, and local officials." Id. at 1187 (citations omitted).

In Nevada Restaurant Services, Inc. v. City of Las Vegas, City Council of Las Vegas, 2019 WL 427326 (D.Nev. Feb. 4, 2019), the owner of a local tavern that included slot machines filed a civil action against the City of Las Vegas and its city council in the U.S. District Court for the District of Nevada.  Plaintiff asserted various claims based on the city's issuance of a gaming license that restricted the number of slot machines on the tavern premises.  It alleged that the city's decision was arbitrary and capricious, and that the plaintiff was being treated differently than other similar businesses.  Id. at *1.  The city answered the complaint but did not counterclaim for affirmative relief.  Prior to trial, the district court considered a variety of requests from the parties.  The district court denied plaintiff's request to use an advisory jury in connection with its claim seeking a writ of mandamus.  The district court also granted in part and denied in part the city's motion in limine that sought to prevent the trial testimony of various city council members.  The court rejected without prejudice the plaintiff's assertion that the city already had waived objection to trial testimony by allowing city council members to be deposed

in discovery.  Id. at *3.  The district court indicated that it might permit trial testimony from city council members if the plaintiff required more than the administrative record of the gaming license decision to establish its equal protection claim.  The district court preliminarily determined that it "will permit Plaintiff to elicit testimony from City Council Members, but will limit such testimony to objective circumstances surrounding their decision-making process for Plaintiff's license application.  Id. at *4.  However, the court also ruled that "at this time the Court will not allow Plaintiff to inquire about the subjective mental impressions or processes of City Council Members.  Plaintiff has not supported its present need to take such action in light of the availability of comparable evidence."  Id.

In Department of Commerce v. New York, 139 S.Ct. 2551 (2019), various States, counties, cities, and other entities commenced separate civil actions in the U.S. District Court for the Southern District of New York.  They challenged a decision by the Secretary of Commerce to include a citizenship question in the decennial census form.  The decision to include the citizenship question was alleged to be in violation of the U.S. Constitution and various federal statutes, and subject to review under the federal Administrative Procedure Act ("APA").  Declaratory and injunctive relief were sought.  The separate complaints eventually were answered, but no counterclaims were filed seeking affirmative relief against the various plaintiffs.  After the Secretary submitted the administrative record on which his decision allegedly was based, he submitted a supplement.  Because the administrative record was incomplete despite the supplement, the district court found that there were exceptional circumstances warranting an order allowing the Secretary to be deposed, 333 F.Supp.3d 282 (S.D.N.Y. 2018),[33] but that order was stayed by the Supreme Court.  Thereafter, the district court

---

[33] In concluding that exceptional circumstances existed, the district court in Department of Commerce observed, inter alia, as follows: "The foregoing record is enough to justify the relief Plaintiffs seek, but a deposition is also warranted because Defendants – and Secretary Ross himself – have placed the credibility of Secretary Ross squarely at issue in these cases…In short, it is indisputable – and in other (perhaps less guarded) moments, Defendants themselves have not disputed – that the intent and credibility of Secretary Ross himself are not merely relevant, but central, to Plaintiffs claims in this case.  It goes without saying that Plaintiffs cannot meaningfully probe or test, and the Court cannot meaningfully evaluate, Secretary Ross's intent

conducted a bench trial under the APA to review the Secretary's decision, but without the Secretary's deposition. After trial, the district court entered judgment vacating the Secretary's decision, enjoining the Secretary from including the citizenship question, and remanding the matter for further action by the Secretary consistent with the court's decision. 351 F.Supp.3d 502, 673- 678 (S.D.N.Y. 2019). In light of its final decision, the district court vacated as moot its prior order allowing the Secretary to be deposed. Id. at 680.

Although an appeal was taken to the Second Circuit, the Supreme Court granted certiorari before the circuit court could enter a judgment. The Supreme Court affirmed the district court's decision to vacate the Secretary's decision after review under the APA. 139 S.Ct. at 2576. The Court concluded that the Secretary's explanation for his decision was pretextual and therefore inadequate to permit meaningful judicial review. Id. at 2574-76. The Court also concluded that the order permitting the Secretary to be deposed was premature at the time it was entered by the district court, but reiterated that there is a "narrow exception to the general rule against inquiring into 'the mental processes of administrative decisionmakers'…On a 'strong showing of bad faith or improper behavior,' such an inquiry may be warranted and may justify extra-record discovery." Id. at 2573-74 (emphasis added). Based on the additional record that eventually was provided by the Secretary, the Court concluded that such discovery of matters outside the administrative record was justified. Id. at 2575.[34]

**B. The Legislative Privilege Should Not Bar Discovery in this Case.[35]**

---

and credibility without granting Plaintiffs an opportunity to confront and cross-examine him." 333 F.Supp.3d at 288 (emphasis added).

[34] Arguably, the Court's discussion of the motion to compel was dicta because the district court had already vacated its order as moot.

[35] At the hearing, Defendants emphasized a decision that was cited in connection with their 12(c) Motion, but which was not re-cited in their written arguments in connection with the instant matters. See 12(c) Reply at 10:22 to 11:5. In Tumey v. State of Ohio, 273 U.S. 510 (1927), the Court concluded that a mayor authorized under Ohio law to preside over cases before a "liquor court," the outcome of which directly impacted his personal finances as well as the city's, had a conflict of interest that denied the defendant an impartial judge. 273 U.S. at 534-35. The Court initially observed that "All questions of judicial qualification may not involve constitutional validity. Thus, matters of kinship, personal bias, state policy, remoteness of

24

As discussed at note 16, supra, the court previously concluded that Defendants had waived any privilege concerning the January 22, 2019 Advisory Opinion because they had placed the matter at issue in this proceeding. As discussed above, none of the most significant decisions addressing legislative privilege included the circumstances before this court: Defendants affirmatively seek to impose civil liability on the Debtor for compensatory, special damages, pre and post judgment interest, attorneys' fees and costs of suit in connection with an alleged breach of the same Settlement Agreement and both parties' performance under that Settlement Agreement. The January 27, 2019 Advisory Opinion is only one aspect of the parties' disputed factual allegations. Except as noted below, in none of the dozens of additional cases cited by the Debtors and the Defendants, see notes 28 and 29, supra, was the party asserting a legislative or similar privilege pursuing a civil claim for affirmative, monetary relief against the party seeking the subject discovery or testimony.[36]

interest would seem generally to be matters merely of legislative discretion." Id. at 523. The Court also observed, however, that "A situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial, necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him." Id. at 534. Early in the opinion, the Court noted that the mayor's conviction of the defendant initially was reversed in a decision by the county court of common pleas. Id. at 515, citing 25 Ohio Nisi Prius (N.S.) 580 (1925). In the court of common pleas, various witnesses were called, including a deputy marshal who testified that he obtained his position in the enforcement of Prohibition Era local liquor laws through the same mayor. 25 Ohio N.P. (N.S.) at 583-84. Despite the testimony and other evidence presented before the court of common pleas, the mayor's decision subsequently was affirmed on intermediate appeal, 23 Ohio Law Rep. 624 (1925), and by dismissal on further appeal to the Ohio Supreme Court. 115 Ohio St. 701 (1926). Not surprisingly, the conviction was reversed by the U.S. Supreme Court and the matter was remanded. The history of the Tumey case reflects that the party challenging the validity of the mayor's decision in the Ohio state court proceeding was permitted to call witnesses to discuss the operations of the liquor court over which the mayor presided. There apparently was no immunity or privilege, judicial or otherwise, that prevented such information from being presented or considered. The Tumey case was not referenced in Justice Black's concurring opinion in Tenney, see discussion at 16-17, supra, but does illustrate that parties must be given an opportunity to defend themselves from claims brought by legislative bodies. On a thorough reading of Tumey, it is not clear that the decision is helpful to the position taken by the Defendants in the present case.

[36] In Board of Supervisors of Fluvanna County v. Davenport & Co.,LLC, 742 S.E.2d 59 (Va. 2013), the board of supervisors for a Virginia county sued its private financial advisor for damages on a variety of legal claims. The defendant, rather than the plaintiff, asserted that

In the present case, Defendants' counterclaims against the Debtor were based on the same Settlement Agreement. Defendants' claims for breach of contract and breach of implied covenant of good faith and fair dealing arose out of the same Settlement Agreement and likely were compulsory counterclaims within the meaning of Civil Rule 13(a). See generally 6 ARTHUR R. MILLER, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1410 ("6 Wright & Miller") (3rd ed. April 2021 update) (the same "transaction or occurrence" requirement in Civil Rule 13(a) should be interpreted liberally). The failure to assert a compulsory counterclaim ordinarily bars the party from later asserting the claim. Id., §1409 ("A failure to do so will result in it being barred in any subsequent action, at least in the federal court.") Bankruptcy Rule 7013, however, specifies that Civil Rule 13 applies "except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief." FED.R.BANKR.P. 7013 (emphasis added).

In this instance, Defendants' claims, if any, arose before the Chapter 11 petition was filed and Defendants were not required to file the Counterclaim at all. As previously discussed at note 6, supra, the automatic stay did not apply because the USDC Case had been commenced by the Debtor rather than the Defendants. Instead of simply filing a proof of claim in the Chapter 11 proceeding based on a breach of the Settlement Agreement, Defendants filed their Counterclaim seeking an unliquidated amount of damages.[37] In other words, Defendants have voluntarily and squarely placed at issue the facts and circumstances in which the Debtor seeks discovery.

---

legislative immunity barred the court from considering the complaint. 742 S.E.2d at 585. After the complaint was dismissed, the Virginia Supreme Court concluded that the board of supervisors had waived their legislative immunity by declining to assert legislative immunity, voluntarily filing a complaint that involves issues protected by legislative immunity, and making an unequivocal waiver of protection from inquiry into legislative motivation in the text of its complaint. Id. at 589-591. Although Defendants vigorously maintain that legislative immunity applies in the instant case, their Counterclaims and affirmative defenses to the SAC that they voluntarily chose to pursue warrant a similar result at the discovery stage.

[37] As of the hearing date on the instant motions, there is no indication in the claims register maintained by the Clerk of the Court that the Defendants have ever filed a proof of claim

Under these circumstances, the assertion of a legislative privilege to prevent the Debtor from discovering the evidentiary basis for Defendants' claims is unsupported by the authorities they cite. To the contrary, the Court's decision in <u>Morgan</u> predated the adoption of the Civil Rules permitting liberal discovery of information even if it is sought from witnesses who might be prevented from testifying at trial. Justice Black's concurring opinion in <u>Tenney</u> observed that the petitioner <u>would have been able to defend himself</u> if the legislative body had pursued action against him. The majority in <u>Village of Arlington Heights</u> approved the district court's decision to allow board members to be questioned about the information available at the time of the challenged decision. The Ninth Circuit in <u>Foley</u> allowed the district court to determine whether city officials could be deposed to establish the objective circumstances for enacting a zoning ordinance. The Ninth Circuit in <u>Kawaoka</u> examined the immunity of local officials, but not the relevance of their testimony in absence of any affirmative claims brought against the plaintiffs.[38] The Fourth Circuit in <u>Washington Suburban Sanitary Commission</u> limited the scope of the information sought from state and local officials by a federal investigative agency because it did not know whether a suit would require officials to be involved or to testify.[39] The Ninth Circuit in <u>Lee</u> emphasized that local officials should not be distracted by litigation challenging their actions, but suggested no similar rationale would apply when officials initiate their own proceedings against the same parties. The district court in <u>Nevada Restaurant Services</u> did not preclude city officials from being deposed nor did it preclude their testimony in advance of

---

in the Debtor's bankruptcy proceeding. Nothing in the Counterclaim requests that it be treated as a proof of claim in the Chapter 11 proceeding.

[38] The circuit panel in <u>Kawaoka</u> noted that there was no evidence suggesting that the plaintiffs had been singled out for special treatment, but the record does not indicate that discovery was even attempted to determine the basis of the decision reached by the officials.

[39] The Fourth Circuit in <u>Washington Suburban Sanitary Commission</u> observed that legislators should be able to devote all of the energies to discharging their public duties free of the hassles of litigation, but expressed no view on what happens when legislators initiate their own litigation.

trial.[40]  The Court in <u>Department of Commerce</u> concluded that extraordinary circumstances actually did exist that would have permitted the Secretary to be deposed as a result of his bad faith or improper behavior of offering a pretext for his decision.[41]  The teaching of all of these principal cases is that the assertion of legislative privilege does not create a bright line rule forbidding the discovery sought by the Debtor nor a subsequent offer to admit such evidence at trial.

There is no doubt that a legislative privilege is appropriate in most cases where the decisions of elected officials, as well as by governmental entities operated through elected officials, are challenged.  Elections truly do have consequences.  But when elected officials and governmental entities act in a different capacity, different considerations apply.  Here, the Defendants voluntarily chose to pursue affirmative relief against the Debtor when they were under no obligation to do so.  Elections are a choice and that decision to pursue their own claims against the Debtor was a choice as well.  In this situation, Defendants simply have not met their burden of demonstrating that relief from the pending discovery is appropriate or that it would be protected by the legislative privilege.  Nor have the Defendants met their burden of demonstrating that any evidence obtained through discovery should not be admitted at trial in the USDC conducted either by a jury or by a district judge.  The existing Stipulated Protective Order is sufficient to prevent disclosure of such evidence until specific evidentiary materials are proposed to be admitted at trial.

Under these circumstances, Defendants' redaction of the emails identified in the Compel Motion is not authorized by legislative privilege.  Likewise, Defendants request in the Protective

---

[40] Presumably, trial already took place in the <u>Nevada Restaurant Services</u> action and the district court might have decided whether to allow city officials to be examined about their subjective mental impressions or processes if other comparable evidence was not sufficient to present the plaintiff's claims.

[41] As discussed at note 33, <u>supra</u>, the district court in <u>Department of Commerce</u> specifically considered that the Secretary had placed his own credibility "squarely at issue" in the case.  In concluding that the deposition of the Secretary would have been warranted, the Court expressed no disagreement with the district court's observation.

28

Motion to preclude such discovery and to determine admissibility in advance of trial is not appropriate under a legislative privilege.[42]  Because information may be sought that is reasonably calculated to lead to discovery of admissible evidence, neither the rationale behind the legislative privilege nor the Defendants' assertion of damage claims against the Debtor support the requested discovery limitations sought at this time.  The disclosure and use of such information shall remain subject to the prior Stipulated Protective Order that remains in effect.[43]

### C.  <u>The Other Privilege Raised by the Defendants.</u>

As previously mentioned, documents 65, 66, 67 and 68 identified in the March 16 Privilege Log describe the basis of the asserted privilege as "Attorney-Client Privilege: Atty/Client Communication."  As discussed above, the parties vigorously dispute Defendants' assertion of legislative privilege or some equivalent.  For some reason, however, neither the Compel Motion nor the Protective Motion address the assertion of attorney-client privilege in connection with those specific items described in the privilege log.

While Defendants intentionally have placed their conduct at issue through their Counterclaims and affirmative defenses, the court cannot infer that Defendants have intentionally relinquished their claim of attorney-client privilege.  Not even the Debtor suggests that Defendants have done so.  Under these circumstances, documents 65, 66, 67 and 68, must be produced in unredacted form <u>except</u> to the extent Defendants re-assert the attorney-client

---

[42] Debtor and the Defendants present competing arguments over whether the Board's decision was a legislative act, an administrative action, or an executive activity. <u>Compare</u> Compel Motion at 11 n.9, Compel Reply at 3:18 to 4:12, and Debtor's Jones Response at 4:1 to 5:25, <u>with</u> Protective Reply at 9:8-17, Discovery Stay Reply at 12:12 to 13:4 & n.4. Regardless of the characterization of the Board's decision, Defendants' civil claims for affirmative monetary relief against the Debtor places their conduct at issue.

[43] At the hearing on the instant motions, Commissioner Jones represented through counsel that discovery was being attempted from his wife as well as other unidentified entities. Apparently, the representation was intended to imply that a flood of additional discovery would be initiated unless Defendants' requested relief was granted.  No effort was made to link such discovery to the limited issue regarding the applicability of a legislative privilege.  No suggestion was made that a legislative privilege would extend to the spouse of a public official.  The relationship of the other entities to the Defendants also was not articulated.  Obviously, any such individuals or entities can separately seek their own protective orders.  Or not.

privilege.  In the event Debtor objects to the re-assertion, if any, of the attorney-client privilege, the parties can seek appropriate relief.

## CONCLUSION

For the reasons discussed, the court concludes that the Compel Motion should be granted without prejudice to Defendants' re-assertion of the attorney-client privilege as to documents 65, 66, 67 and 68 identified in the March 16 Privilege Log.  Additionally, the court concludes that the Protective Motion should be denied with respect to the discovery sought by the Debtor, without regard to the admissibility at trial of any information for which legislative privilege is asserted.  The legislative privilege, if any, may be re-asserted at the time of trial. Unless otherwise ordered by the court, the previous Stipulated Confidentiality Order shall apply.

Concurrently with this Memorandum Decision, separate orders are entered on the Compel Motion and the Protective Motion.

Copy sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
GYPSUM RESOURCES, LLC
ATTN:  OFFICER/MANAGING AGENT
8212 SPANISH RIDGE AVENUE, #200
LAS VEGAS, NV 89148

# # #